# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## CENTRAL DIVISION
## LEXINGTON

Eastern District of Kentucky
**F I L E D**

JUL 0 5 2018

AT LEXINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

**UNITED STATES OF AMERICA**

**V.**

**INDICTMENT NO.** 5:18-CR-81-JMH

**ANDREI-CĂTĂLIN STOICA**
  a.k.a. AMERICAN MASSIVE
  a.k.a. ALEX POPESCU

**VICTOR-AUREL GRAMA**
  a.k.a. C3KEBRU1
  a.k.a. GOLDTEAM
  a.k.a. GRAMA AUREL

**LIVIU-SORIN NEDELCU**
  a.k.a. IDL100
  a.k.a. SORIN MOSHU

**IONUȚ CIOBANU**
  a.k.a. MANUEL HERNANDEZ
  a.k.a. JOHN SNOW

**MARIUS-DORIN CERNAT**
  a.k.a. FREDRAMOS83
  a.k.a. SANDOKIN2
  a.k.a. DOREL MAMUT
  a.k.a. GEORATCU82

**ALEXANDRU ION**
  a.k.a. LENOVO
  a.k.a. DAN DRACU
  a.k.a. ALEX RIKA
  a.k.a. FLORIN SALAM

**ȘTEFAN-ALEXANDRU PĂIUȘI**
  a.k.a. NOLIMIT
  a.k.a. LIMITNO

**EUGEN-ALIN BADEA**
      **a.k.a. CRAZYBRUTUS**
      **a.k.a. CRZYBEAMER**

**CRISTIȘOR OLTEANU**
      **a.k.a. GARETHBALE**
      **a.k.a. CRISTI BUJOR**

**ADRIAN MITAN**
      **a.k.a. ABCD0**
      **a.k.a. XPLADRIAN**

**BOGDAN-ȘTEFAN POPESCU**
      **a.k.a. BOBY POPESCU**
      **a.k.a. BOBI POPESCU**
      **a.k.a. BAU BAU**
      **a.k.a. MARIAN IONESCU**

**FLORIN ARVAT**
      **a.k.a. ARVAT FLORIN**

**ALIN-IONUȚ DOBRICĂ**
      **a.k.a. ALY DOBRICĂ**
      **a.k.a. IONUT ALY**
      **a.k.a. ALIN DINTE**

**VLAD-CĂLIN NISTOR**

**ROSSEN IOSSIFOV**
      **a.k.a. RGCOINS**

\* \* \* \* \*

**THE GRAND JURY CHARGES:**

## INTRODUCTION

1.     At all times relevant to this Indictment, the Defendants, and others known and unknown to the Grand Jury, were members and associates of a criminal organization, herein referred to as the "Alexandria Online Auction Fraud Network," whose leaders,

members, and associates engaged in, among other things, acts of mail and wire fraud, money laundering, identity theft, and counterfeit trademark trafficking. These acts were committed in furtherance of perpetrating a wide-scale online auction fraud scheme, that is, posting false advertisements, often using stolen identities and trademarks from legitimate online auction companies, for goods online, with the intent to defraud United States-based victims out of money and laundering the money through channels in the United States and ultimately Eastern Europe. The Alexandria Online Auction Fraud Network operated principally out of Alexandria, Romania and other locations throughout Europe and the United States.

2.     The Alexandria Online Auction Fraud Network, through its leaders, members, and associates, exploited online auction sites to perpetrate their fraud, including eBay Inc. ("eBay"), a company that facilitates consumer-to-consumer and business-to-consumer sales online; Craigslist, a company that enables individuals to post a variety of online, classified advertisements, for items such as jobs, houses, retail goods, and services; Amazon.com, Inc. ("Amazon"), an electronic commerce and cloud computing company that enables consumers to sell items online; and Autotrader.com, Inc. ("Autotrader"), an online marketplace for automobile sales and purchases, that enables consumers to sell their vehicles directly to consumers. Consumers can use each of these websites as online auction sites to sell their goods.

3.     The leaders, members, and associates of the Alexandria Online Auction Fraud Network, including the Defendants herein, with the help of others, also worked

together to launder the proceeds of the online auction fraud, by converting victim payments into bitcoin in the United States, transferring the bitcoin to Eastern Europe where many members of the Alexandria Online Auction Fraud Network live and work, and then converting the bitcoin back to fiat currency.

4.     Victim payments are often in the form of reloadable prepaid cards, prepaid debit cards, and gift cards of varying types (collectively referred to herein as "prepaid debit cards"), including Green Dot Moneypaks, Visa One Vanilla prepaid debit cards, PayPal My Cash cards, and Amazon gift cards; United States postal money orders; cashier's checks; MoneyGram and Western Union wires; and bank wires and deposits.

5.     Bitcoin is a digital currency that operates as a peer-to-peer payment system. Users send and receive bitcoins using wallet software on a personal computer, mobile device, or web application.  Bitcoin is exchanged between bitcoin addresses, and every bitcoin transaction generates a transaction hash that is forever stored on a public ledger commonly called the bitcoin blockchain.

## COUNT 1
### 18 U.S.C. § 1962(d)

6.     Paragraphs 1 through 5 above are re-alleged and incorporated herein by reference.

### The Enterprise

7.     Beginning on at least December 31, 2013, and continuing until at least the date of this Indictment, in the Eastern District of Kentucky and elsewhere,

4

**ANDREI-CĂTĂLIN STOICA,**
**VICTOR-AUREL GRAMA,**
**LIVIU-SORIN NEDELCU,**
**IONUȚ CIOBANU,**
**MARIUS-DORIN CERNAT,**
**ALEXANDRU ION,**
**ȘTEFAN-ALEXANDRU PĂIUȘI,**
**EUGEN-ALIN BADEA,**
**CRISTIȘOR OLTEANU,**
**ADRIAN MITAN,**
**BOGDAN-ȘTEFAN POPESCU,**
**FLORIN ARVAT,**
**ALIN-IONUȚ DOBRICĂ,**
**VLAD-CĂLIN NISTOR, and**
**ROSSEN IOSSIFOV**

and others known and unknown to the Grand Jury, constituted an "enterprise," as defined

by Title 18, United States Code, Section 1961(4) (hereafter the "Alexandria Online

Auction Fraud Network" or the "Enterprise"), that is, a group of individuals associated in

fact. The Enterprise constituted an ongoing organization whose members functioned as a

continuing unit for the common purpose of achieving the objectives of the Enterprise.

This Enterprise was engaged in, and its activities affected, interstate and foreign

commerce.

### The Racketeering Violation

8.      Beginning on at least December 31, 2013, and continuing until at least the

date of this Indictment, in the Eastern District of Kentucky and elsewhere,

**ANDREI-CĂTĂLIN STOICA,**
**VICTOR-AUREL GRAMA,**
**LIVIU-SORIN NEDELCU,**
**IONUȚ CIOBANU,**
**MARIUS-DORIN CERNAT,**
**ALEXANDRU ION,**

5

**ȘTEFAN-ALEXANDRU PĂIUȘI,**
**EUGEN-ALIN BADEA,**
**CRISTIȘOR OLTEANU,**
**ADRIAN MITAN,**
**BOGDAN-ȘTEFAN POPESCU,**
**FLORIN ARVAT,**
**ALIN-IONUȚ DOBRICĂ,**
**VLAD-CĂLIN NISTOR, and**
**ROSSEN IOSSIFOV**

being persons employed by and associated with the Enterprise, which Enterprise engaged

in, and the activities of which affected, interstate and foreign commerce, did knowingly,

willfully, and intentionally combine, conspire, confederate, and agree together and with

each other and with other persons known and unknown to the Grand Jury to violate 18

U.S.C. § 1962(c), that is, to conduct and participate, directly and indirectly, in the

conduct of the affairs of the Enterprise through a pattern of racketeering activity, as that

term is defined in Title 18, United States Code, Section 1961(1) and (5), involving

multiple acts indictable under

      a.  18 U.S.C. §§ 1341 and 1343 (relating to mail and wire fraud),

      b.  18 U.S.C. §§ 1956(a)(1)(A)(i), 1956(a)(1)(B)(i), 1956(a)(2)(B)(i),
          1956(a)(2)(A), and 1965(h) (relating to the laundering of monetary
          instruments),

      c.  18 U.S.C. § 1028 (relating to fraud and related activity in connection
          with identification documents, authentication features, and information),
          and

      d.  18 U.S.C. § 2320(a)(1) (relating to trafficking in goods or services

bearing counterfeit marks).

## Purposes of the Enterprise

9.     The purposes of the Enterprise included the following:

   a. Enriching members and associates of the Enterprise through, among

   other things, mail and wire fraud, money laundering, identity theft, and

   trafficking in counterfeit trademarks.

   b. Developing more efficient and effective means of conducting its

   members' and associates' activities.

   c. Protecting the Enterprise and its members from detection,

   apprehension, and prosecution by law enforcement.

## Roles of the Defendants

10.     ANDREI-CĂTĂLIN STOICA is a Romanian national from Alexandria,

Romania.  During times relevant to the Indictment, he owned Design Plast PVC Usi Si

Ferestre, a door and window company with an office in Romania, and Design Plast

Menuiserie, a carpentry company located in Belgium.  Relevant to this Indictment,

STOICA also acted as a mid- to high-level manager in the Alexandria Online Auction

Fraud Network.

11.     VICTOR-AUREL GRAMA is a Romanian national from Giurgiu,

Romania.  Relevant to this Indictment, GRAMA was a mid-level manager in the

Alexandria Online Auction Fraud Network.

7

12.     LIVIU-SORIN NEDELCU is a Romanian national from Zimnicea, Romania, but spent several years in Alexandria, Romania.  Relevant to this Indictment, NEDELCU was a mid-level manager in the Alexandria Online Auction Fraud Network.

13.     IONUŢ CIOBANU is a Romanian national from Alexandria, Romania. Relevant to this Indictment, CIOBANU was a mid-level manager in the Alexandria Online Auction Fraud Network.

14.     MARIUS-DORIN CERNAT is a Romanian national from Alexandria, Romania.  Relevant to this Indictment, CERNAT was a mid-level manager in the Alexandria Online Auction Fraud Network.

15.     ALEXANDRU ION is a Romanian national from Alexandria, Romania. Relevant to this Indictment, ION was a mid-level manager in the Alexandria Online Auction Fraud Network.

16.     ŞTEFAN-ALEXANDRU PĂIUŞI is a Romanian national from Bucharest, Romania, who has ties to Alexandria, Romania through his wife.  Relevant to this Indictment, PĂIUŞI was a mid-level manager in the Alexandria Online Auction Fraud Network.

17.     EUGEN-ALIN BADEA is a Romanian national from Alexandria, Romania.  Relevant to this Indictment, BADEA was a mid-level manager in the Alexandria Online Auction Fraud Network.

18.     CRISTIŞOR OLTEANU is a Romanian national from Alexandria, Romania.  Relevant to this Indictment, OLTEANU was a mid-level manager in the

8

Alexandria Online Auction Fraud Network.

19.    ADRIAN MITAN is a Romanian national from Galați, Romania.  MITAN worked together with NEDELCU, who has lived and worked in Alexandria, as further described below. Relevant to this Indictment, MITAN was a mid-level manager in the Alexandria Online Auction Fraud Network.

20.    BOGDAN-ȘTEFAN POPESCU is a Romanian national from Alexandria, Romania.  During times relevant to this Indictment, POPESCU purportedly managed Spalatorie Auto Red Link, a car wash in Bucharest, Romania.  Relevant to this Indictment, POPESCU was a high-level manager of the Alexandria Online Auction Fraud Network.

21.    FLORIN ARVAT, from Bucharest, Romania, and ALIN-IONUȚ DOBRICĂ, from Alexandria, Romania, are also Romanian nationals.  During times relevant to this Indictment, both purportedly worked for POPESCU at the car wash.  Also relevant to this Indictment, ARVAT and DOBRICĂ served as low-level employees of POPESCU.

22.    VLAD-CĂLIN NISTOR is a Romanian national from Cluj-Napoca, Romania.  During all times relevant to this Indictment, NISTOR ran a bitcoin exchange company called Coinflux Services SRL ("Coinflux"), registered with the Romanian government since August 12, 2015.  Relevant to this Indictment, NISTOR is a bitcoin exchanger for many members of the Alexandria Online Auction Fraud Network.

23.    ROSSEN IOSSIFOV runs a bitcoin exchange company called RG Coins

9

out of Sofia, Bulgaria. IOSSIFOV, a Bulgarian national, exchanges bitcoin for fiat currency, often providing customers fiat currency through in-person transactions. Relevant to this Indictment, IOSSIFOV is a bitcoin exchanger for many members of the Alexandria Online Auction Fraud Network.

24.    The Confidential Source ("CS") is an American citizen, who, beginning in late 2014, began laundering funds on behalf of several individuals conducting online auction fraud. In June of 2015, the CS was confronted about his illegal activity by the U.S. government and began cooperating with law enforcement at that time. He conducted all activities in furtherance of the crimes described herein in the Eastern District of Kentucky.

<strong>Means and Methods of the Enterprise</strong>

25.    Among the means and methods by which the Defendants and their associates conducted and participated in the conduct of the affairs of the Enterprise were the following:

    a.    Romania-based members of the Enterprise and their associates posted false and fictitious advertisements to online auction and sales websites designed to facilitate consumer-to-consumer sales in the United States in order to defraud consumers in the United States of money that they paid for the nonexistent items advertised.

    b.    Members of the Enterprise and their associates obtained or created accounts to post fake advertisements, email accounts to communicate with victims,

10

and bank accounts to receive victim payments by criminally possessing, transferring, and using personal identifying information of United States-based victims.

c.   Members of the Enterprise and their associates used wire communications to deliver to victims, most often based in the United States, invoices and emails containing the trademarks of legitimate operations in order to entice those individuals to send money for payment of the nonexistent, fraudulently advertised goods.

d.   Members of the Enterprise and their associates either collected victim payments and sent information necessary to redeem those payments to money launderers located in the United States, or directed that victims send payment directly to bank accounts, U.S. Post Office boxes, addresses, or MoneyGram and Western Union locations of the money launderers located in the United States.  These money launderers converted victim payment into bitcoin and sent the bitcoin back to Romanian-based members of the Enterprise and their associates.  These bitcoin recipients then employed the services of bitcoin exchangers located in Europe, who were aware that the bitcoin was obtained through fraudulent means, to convert the bitcoin to fiat currency.

**Overt Acts**

26.   In furtherance of the conspiracy and to achieve the objectives thereof, the

Defendants and their co-conspirators performed or caused to be performed the following overt acts, among others, in the Eastern District of Kentucky and elsewhere:

a.  On or about March 7, 2016, ANDREI-CĂTĂLIN STOICA provided the CS a bitcoin address through online communication.  Over the next month, STOICA provided the CS prepaid debit card codes he had unlawfully obtained from victims.  On March 28, 2016, the CS paid STOICA for the prepaid debit card codes provided to him through a bitcoin transfer to the bitcoin address STOICA provided on March 7, 2016.  On March 29, 2016, STOICA sent this bitcoin, and bitcoin from other sources, to ROSSEN IOSSIFOV, who exchanged the bitcoin for fiat currency.

b.  On or about November 6, 2016, VICTOR-AUREL GRAMA sent wire communications to the CS over an online, encrypted chat messaging service, concerning how to write the terms and rules on invoices he sent to victims.

c.  On or about November 12, 2014, LIVIU-SORIN NEDELCU sent an email to a victim, encouraging him or her to "Please pay for your 1969 Ford Mustang March 1!"

d.  On or about March 30, 2016, IONUȚ CIOBANU sent an email to a victim providing details about a fraudulent 2007 Honda CR-V EX-L advertisement.

e.  On or about January 30, 2015, MARIUS-DORIN CERNAT sent an email

to a victim providing details about a fraudulent 2007 Honda Odyssey EX-L advertisement.

f.  On or about June 2, 2016, ALEXANDRU ION posted four OneVanilla prepaid debit card codes to a Google Sheets spreadsheet he shared with the CS.

g.  On or about March 22, 2016, ŞTEFAN-ALEXANDRU PĂIUŞI sent wire communications to the CS over an online, encrypted chat messaging service inquiring into his "cashout hours" because prepaid debit cards "must be cashed out asap to be sure all stay good."

h.  On or about May 12, 2015, EUGEN-ALIN BADEA posted three PayPal My Cash Code numbers to the Google Sheets spreadsheet he shared with the CS.

i.  On or about July 22, 2016, CRISTIŞOR OLTEANU sent a text message to the phone of an individual identified as D.F., containing bank information for wire instructions in an account in the name of Auto Value Remarketing, Inc.

j.  On or about July 1, 2016, ADRIAN MITAN sent wire communications to the CS over an online, encrypted chat messaging service requesting that the CS provide him four to five bank accounts per week.

k.  On or about November 25, 2015, BOGDAN-ŞTEFAN POPESCU instructed VLAD-CALIN NISTOR to send funds to a bank account in the

name of FLORIN ARVAT.  On November 26, 2015, NISTOR deposited funds into ARVAT's account.

l.   On or about November 26, 2015, FLORIN ARVAT withdrew money from an account in his own name at ING Bank, which was funded, in part, by a wire from VLAD NISTOR.

m.  On or about August 7, 2017, ALIN-IONUȚ DOBRICĂ called Bitcoin Romania to transfer funds they owed him from an exchange of bitcoin to another bank account.

n.   On or about April 21, 2014, POPESCU received a forwarded email from H.A.L., who responded to an advertisement and sent a copy of his driver's license.  POPESCU and his coconspirators then used L.A. (an inversion of H.A.L.'s middle and last names) as the seller of vehicles using email address motor2014cars2014@gmail.com.

o.   On June 13, 2014, ebay.billing.inc@gmail.com, an email address belonging to or associated with POPESCU, sent W.W. an email that contained a confirmation that eBay Motors received payment and included a counterfeit trademark for eBay.

All in violation of Title 18, United States Code, Section 1962(d).

## COUNT 2
### 18 U.S.C. § 1349

27.   Paragraphs 1 through 5 above are re-alleged and incorporated herein by reference.

14

28.     ANDREI-CĂTĂLIN STOICA, a/k/a "AMERICAN MASSIVE", a/k/a "REDBULL1", a/k/a "SAFARI2016", a/k/a "SAFARII", a/k/a "SSAFARI", a/k/a "TORONTO1", a/k/a "EKATHY2033", a/k/a "ALEX POPESCU", a/k/a "WESTRIVERAUTO", approached the CS on or around September 2, 2015, via a jabber instant messaging client, inquiring about the CS's fees for converting payment methods such as Visa One Vanilla and Green Dot cards.

29.     From at least September 2, 2015, through the date of this Indictment, in Fayette County, in the Eastern District of Kentucky and elsewhere,

### ANDREI-CĂTĂLIN STOICA

and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit wire fraud, that is, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

### Purpose of the Conspiracy

30.     It was the purpose of the conspiracy to entice victims based in the United States to send money to purchase items on the internet that did not exist.

31.     It was also the purpose of the conspiracy to obtain personal identifying information of real individuals.

### Manner and Means

32.     The manner and means used to accomplish the objectives of the conspiracy included, among others, the following:

33.     STOICA used the internet to post advertisements for goods to online auction websites, including eBay and Craigslist.

34.     STOICA persuaded victims that the advertisements were legitimate through various means, including impersonating an American and by pretending to be eBay customer support.  For example, STOICA and his coconspirators used lopezsusan82@gmail.com and ebay@online-invoice-support.com to communicate with victims.

35.     STOICA also persuaded victims that his advertisements were legitimate by sending the victims convincing invoices for their purchases. On at least one occasion, on or about October 24, 2017, STOICA requested through online communication that the CS send him an invoice other fraudsters had used for purchases through cashier's checks and provided him with an email address to which he could send the invoice.  Again, on March 31, 2017, STOICA sent the CS his invoice to discuss ways to improve its appearance.

36.     STOICA requested payment for the items he advertised in various methods, depending on which option was the easiest to convert at the time.  Through online communication, STOICA consulted the CS about the best methods of payment in the

United States at the time.

37.    In this way, STOICA convinced numerous individuals to send him payment for nonexistent items advertised online.

38.    At times, STOICA also informed the victim that a refund needed to be issued to the victim and requested that the victim send his photo identification and credit card or debit card information to refund the full payment for the item STOICA had lured the victim into paying for in the first place.  In this way, STOICA obtained means of identification of the victims.

All in violation of Title 18, United States Code, Section 1349.

## COUNT 3
## 18 U.S.C. § 1956(h)

39.    Paragraphs 1 through 5 and 27 through 38 above are re-alleged and incorporated herein by reference.

40.    From at least September 2, 2015, through the date of this Indictment, in Fayette County, in the Eastern District of Kentucky and elsewhere,

### ANDREI-CĂTĂLIN STOICA and
### ROSSEN IOSSIFOV

and others known and unknown, knowingly combined, conspired, confederated, and agreed together and with each other to commit offenses against the United States in violation of Title 18, United States Code, Sections 1956(a)(1) and 1956(a)(2), to wit:

    (a) knowingly conducting and attempting to conduct financial transactions affecting

        interstate and foreign commerce, which transactions involved the proceeds of

17

specified unlawful activity, that is, violations of Title 18, United States Code, Sections 2, 1343, and 1349, with the intent to promote the carrying on of such specified unlawful activity and, that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i);

(b) knowingly conducting and attempting to conduct financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, violations of Title 18, United States Code, Sections 2, 1343, and 1349, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i);

(c) knowingly transporting, transmitting, and transferring, or attempting to transport, transmit, and transfer monetary instruments and funds from a place in the United States to or through a place outside the United States, with the intent to promote the carrying on of a specified unlawful activity, that is, Title 18, United States Code, Sections 2, 1343, and 1349, in violation of Title 18, United States Code, Section 1956(a)(2)(A); and

(d) knowingly transporting, transmitting, and transferring, or attempting to transport, transmit, and transfer monetary instruments and funds from a place in the United

States to or through a place outside the United States, knowing that the

instruments and funds represent the proceeds of some form of unlawful activity

and that the transportation was designed in whole or part to conceal or disguise the

nature, location, source, ownership, or control of the proceeds of specified

unlawfully activity, that is, Title 18, United States Code, Sections 2, 1343, and

1349, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i).

### Manner and Means

41.     The manner and means used to accomplish the objectives of the conspiracy

included, among others, the following:

42.     After enticing a victim to send money to STOICA in the manner described

above, STOICA would collect payment information and provide that to the

coconspirators. STOICA and a coconspirator shared a Google Sheets spreadsheet with

each other, on which the two maintained a ledger of their activity.  Through wire

communication, STOICA provided a coconspirator at least one Gmail address to use to

access the Google Sheets spreadsheet.  On this spreadsheet, STOICA and a coconspirator

recorded information about payments victims had made to STOICA and his confederates.

STOICA also communicated the necessary information about victim payments to the

coconspirators via online communication.

43.     STOICA knew that other coconspirators process the money sent by the

victims.  These coconspirators were based in the United States, and processed the money

by taking the codes from the prepaid debit cards, re-encoding those codes to new

"dummy" cards or collecting the wire transfers, money orders, and cashier's checks, and converting that money to bitcoin to transfer to STOICA.

44.     STOICA provided a coconspirator information about how the coconspirator could remit the victim payments on the Google Sheets spreadsheet or through online communication. The coconspirator would then transfer that bitcoin he had converted for STOICA from the Eastern District of Kentucky to bitcoin addresses STOICA either provided on the Google Sheets spreadsheet or provided to the coconspirator in online communications.

45.     STOICA then transferred his bitcoin to another coconspirator located outside the United States, including ROSSEN IOSSIFOV. IOSSIFOV, and others known and unknown, exchanged the bitcoin that represented the proceeds of the underlying fraud into fiat currency, including Romanian lei (RON), Euros, and other government-backed currency. IOSSIFOV knew the bitcoin was fraudulently obtained.

All in violation of Title 18, United States Code, Section 1956(h).

### COUNT 4
### 18 U.S.C. § 1028A

46.     On or about June 10, 2016, in Fayette County, in the Eastern District of Kentucky and elsewhere,

### ANDREI-CĂTĂLIN STOICA

did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, A.M., during and in relation to a felony violation enumerated in 18 U.S.C. § 1028(a)(c), to wit, wire fraud, knowing that the means of

identification belonged to another actual person, in violation of Title 18, United States Code, Section 1028A(a)(1).

### COUNT 5
### 18 U.S.C. § 1028A

47.    On or about June 25, 2016, in Harlan County, in the Eastern District of Kentucky and elsewhere,

### ANDREI-CĂTĂLIN STOICA

did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, M.L.S., during and in relation to a felony violation enumerated in 18 U.S.C. § 1028(a)(c), to wit, wire fraud, knowing that the means of identification belonged to another actual person, in violation of Title 18, United States Code, Section 1028A(a)(1).

### COUNT 6
### 18 U.S.C. § 1349

48.    Paragraphs 1 through 5 above are re-alleged and incorporated herein by reference.

49.    VICTOR-AUREL GRAMA, a/k/a "GRAMA AUREL", a/k/a "C3KEBRU1", a/k/a "G3KEBRU", a/k/a "GOLDTEAM", a/k/a "GOLDTEAMPULA", a/k/a "AYALABRENDA676", a/k/a "SIFUGIMINLUME", a/k/a "PAIOVER4974031", a/k/a "TELE45SIM", a/k/a "AGA77WIN", approached the CS online on or around January 9, 2015, inquiring into whether the CS could trade Greendot Moneypaks for bitcoin.

50.     From at least January 9, 2015, through in or about December 2017, in Fayette County, in the Eastern District of Kentucky and elsewhere,

## VICTOR-AUREL GRAMA

and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit wire fraud, that is, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

### Purpose of the Conspiracy

51.     It was the purpose of the conspiracy to entice victims based in the United States to send money to purchase items on the internet that did not exist.

### Manner and Means

52.     The manner and means used to accomplish the objectives of the conspiracy included, among others, the following:

53.     GRAMA used the internet to post advertisements for goods to online auction websites, including Craigslist.

54.     GRAMA persuaded victims to send money for the advertised goods by

22

establishing teams of individuals, who were responsible for communicating with victims. These communications included posing as an employee of an online auction website and reassuring customers that the vehicle would arrive with all necessary documentation to obtain clear title.

55.     GRAMA and his coconspirators would send the victims invoices for payment that appeared to be from legitimate companies.  On May 13, 2016, GRAMA sent online communications to the CS to obtain assistance with the invoices, including how to properly instruct the victims to send payment.

56.     GRAMA often consulted with the CS over the methods of payment he should be using for victim payment.  This includes on January 19, 2015, when GRAMA sent wire communications over an online chat messaging service inquiring into whether he should use PayPal My Cash cards. On September 17, 2015, GRAMA asked the CS what information he needed from OneVanilla cards. GRAMA also consulted the CS about posting online advertisements.  For example, on September 3, 2015, GRAMA informed the CS via wire communication over an online chat messaging service that he was having difficulties posting to Craigslist.  On September 14, 2015, GRAMA sent the CS wire communications over an online chat messaging service informing the CS that he had a solution for posting on Craigslist and requested that the CS provide him with 50 to 100 phone numbers.

57.     In this way, GRAMA convinced numerous individuals to send him payment for nonexistent items advertised online.

All in violation of Title 18, United States Code, Section 1349.

## COUNT 7
## 18 U.S.C. § 1956(h)

58.     Paragraphs 1 through 5 and 48 through 57 above are re-alleged and incorporated herein by reference.

59.     From at least January 9, 2015, through in or about December 2017, in Fayette County, in the Eastern District of Kentucky and elsewhere,

### VICTOR-AUREL GRAMA

and others known and unknown, knowingly combined, conspired, confederated, and agreed together and with each other to commit offenses against the United States in violation of Title 18, United States Code, Sections 1956(a)(1) and 1956(a)(2), to wit:

(a) knowingly conducting and attempting to conduct financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, violations of Title 18, United States Code, Sections 2, 1343, and 1349, with the intent to promote the carrying on of such specified unlawful activity and, that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i);

(b) knowingly conducting and attempting to conduct financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, violations of Title 18, United States Code,

Sections 2, 1343, and 1349, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i);

(c) knowingly transporting, transmitting, and transferring, or attempting to transport, transmit, and transfer monetary instruments and funds from a place in the United States to or through a place outside the United States, with the intent to promote the carrying on of a specified unlawful activity, that is Title 18, United States Code, Sections 2, 1343, and 1349, in violation of Title 18, United States Code, Section 1956(a)(2)(A); and

(d) knowingly transporting, transmitting, and transferring, or attempting to transport, transmit, and transfer monetary instruments and funds from a place in the United States to or through a place outside the United States, knowing that the instruments and funds represent the proceeds of some form of unlawful activity and that the transportation was designed in whole or part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of specified unlawfully activity, that is, Title 18, United States Code, Sections 2, 1343, and 1349, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i).

## Manner and Means

60.    The manner and means used to accomplish the objectives of the conspiracy included, among others, the following:

61.     After enticing a victim to send money to GRAMA in the manner described above, GRAMA would collect the payment information from the victim and provide that to the coconspirators. To do this, GRAMA and a coconspirator shared a Google Sheets spreadsheet with each other, on which the two maintained a ledger of their activity. Through wire communication, GRAMA provided the coconspirator at least three Gmail addresses to use to access the Google Sheets spreadsheet.  GRAMA and the coconspirator recorded information about payments victims had made to GRAMA, either by GRAMA providing this information directly on the Google Sheets spreadsheet or communicating the information to the coconspirator, who would insert it into the Google Sheets spreadsheet.

62.     GRAMA knew that other coconspirators process the money sent by the victims.  These coconspirators were based in the United States, and processed the money by taking the codes from the prepaid debit cards, re-encoding those codes to new "dummy" cards, and converting that money to bitcoin to transfer to GRAMA.

63.     GRAMA posted to the Google Sheets spreadsheet the bitcoin addresses to which he wanted his bitcoin sent.  He also provided bitcoin addresses in the course of online chat communications with a coconspirator. The coconspirator sent bitcoin he had converted for GRAMA from the Eastern District of Kentucky to bitcoin addresses GRAMA provided.

64.     GRAMA then transferred his bitcoin to another coconspirator located outside the United States.  That coconspirator would exchange the bitcoin that

represented the proceeds of the underlying fraud into fiat currency, including Romanian lei (RON), Euros, and other government-backed currency.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNT 8
## 18 U.S.C. § 1349

65.     Paragraphs 1 through 5 above are re-alleged and incorporated herein by reference.

66.     LIVIU-SORIN NEDELCU, a/k/a "IDL100", a/k/a "IDL6666", a/k/a "IDL16", a/k/a "FOIAOL2015", a/k/a/ "RAPITORU007", has been communicating with the CS regarding the exchange of various methods of payment for bitcoin since at least May 2, 2015.

67.     From at least May 2, 2015, through in or about January 2018, in Fayette County, in the Eastern District of Kentucky and elsewhere,

### LIVIU-SORIN NEDELCU

and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit wire fraud, that is, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of

executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

## Purpose of the Conspiracy

68.     It was the purpose of the conspiracy to entice victims based in the United States to send money to purchase items on the internet that did not exist.

## Manner and Means

69.     The manner and means used to accomplish the objectives of the conspiracy included, among others, the following:

70.     NEDELCU used the internet to post advertisements for goods to online auction websites, including Craigslist, eBay, and Amazon.

71.     NEDELCU persuaded victims to send money for the advertised goods by creating fictitious but legitimate sounding entities through which he purported to sell vehicles.  For example, he used email address, foiaol2015@gmail.com, belonging to Aol Autos, to communicate with victims by email with subject lines like, "America Online Autos Financial Department [Order # 099106592090]."  The email would contain messages appearing to be legitimate invoices for payment for the advertised item purported to be sold. On or around April 27, 2015, NEDELCU emailed the CS an example of such an enticement.

72.     NEDELCU's sent another invoice that appeared to be from eBay Buyer Protection, which explained why payment in OneVanilla debit cards is necessary, reassured the buyer through a Payment Guarantee Policy, detailed how eBay's Financial

28

Department verified the order, provided an eBay Customer Support phone number, and informed the buyer about how he or she is protected and could obtain a refund.

73.     NEDELCU consulted the CS on language used in these invoices.  For example, on January 18, 2018, NEDELCU sent the CS a link to an image via wire communication over an online chat messaging platform that showed an image of the instructions for payment to eBay Motors for USPS Money Orders NEDELCU sent to victims, and discussed with him ways to edit the instructions.  NEDELCU continued to send the CS links to images that incorporated the edits they discussed.

74.     In this way, NEDELCU convinced numerous individuals to send him payment for nonexistent items advertised online.

All in violation of Title 18, United States Code, Section 1349.

## COUNT 9
### 18 U.S.C. § 1956(h)

75.     Paragraphs 1 through 5 and 65 through 74 above are re-alleged and incorporated herein by reference.

76.     From at least May 2, 2015, through in or about January 2017, in Fayette County, in the Eastern District of Kentucky and elsewhere,

**LIVIU-SORIN NEDELCU**

and others known and unknown, knowingly combined, conspired, confederated, and agreed together and with each other to commit offenses against the United States in violation of Title 18, United States Code, Sections 1956(a)(1) and 1956(a)(2), to wit:

(a) knowingly conducting and attempting to conduct financial transactions affecting

29

interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, violations of Title 18, United States Code, Sections 2, 1343, and 1349, with the intent to promote the carrying on of such specified unlawful activity and, that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i);

(b) knowingly conducting and attempting to conduct financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, violations of Title 18, United States Code, Sections 2, 1343, and 1349, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i);

(c) knowingly transporting, transmitting, and transferring, or attempting to transport, transmit, and transfer monetary instruments and funds from a place in the United States to or through a place outside the United States, with the intent to promote the carrying on of a specified unlawful activity, that is Title 18, United States Code, Sections 2, 1343, and 1349, in violation of Title 18, United States Code, Section 1956(a)(2)(A); and

(d) knowingly transporting, transmitting, and transferring, or attempting to transport,

transmit, and transfer monetary instruments and funds from a place in the United States to or through a place outside the United States, knowing that the instruments and funds represent the proceeds of some form of unlawful activity and that the transportation was designed in whole or part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of specified unlawfully activity, that is, Title 18, United States Code, Sections 2, 1343, and 1349, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i).

## Manner and Means

77.     The manner and means used to accomplish the objectives of the conspiracy included, among others, the following:

78.     After enticing a victim to send money in the manner described above, NEDELCU collected the payment information sent by the victims and provided that to the coconspirators.  NEDELCU and a coconspirator created a Google Sheets spreadsheet, which they shared with each other online and on which they maintained a ledger of transactions conducted between the two.  NEDELCU provided a coconspirator at least one Gmail address for the purpose of accessing and editing the Google Sheets spreadsheet.  NEDELCU would either directly insert the victim payment information to this spreadsheet or convey it to the coconspirator in online communications.

79.     NEDELCU knew that other coconspirators process the money sent by the victims.  These coconspirators were based in the United States, and processed the money by taking the codes from the prepaid debit cards, re-encoding those codes to new

"dummy" cards, and converting that money to bitcoin to transfer to NEDELCU.

80.     NEDELCU posted to the Google Sheets spreadsheet the bitcoin addresses to which he wanted his bitcoin sent. He also provided bitcoin addresses in the course of online chat communications with a coconspirator. The coconspirator then sent bitcoin he had converted for NEDELCU from the Eastern District of Kentucky to bitcoin addresses NEDELCU provided.

81.     NEDELCU then transferred his bitcoin to another coconspirator located outside the United States. That coconspirator would exchange the bitcoin that represented the proceeds of the underlying fraud into fiat currency, including Romanian lei, Euros, and other government-backed currency.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNT 10
## 18. U.S.C. § 1349

82.     Paragraphs 1 through 5 above are re-alleged and incorporated herein by reference.

83.     IONUȚ CIOBANU, a/k/a "MANUEL.HERNANDEZ303", a/k/a "JOHNSNOW217", a/k/a "JUDITHLANE82", a/k/a "CYRILLIOFDAHOLLOWAY", approached the CS online on or around November 22, 2015, inquiring into whether the CS would purchase prepaid debit card codes from him in exchange for bitcoin.

84.     From at least November 22, 2015, through in or about January 2017, in Fayette County, in the Eastern District of Kentucky and elsewhere,

32

## IONUȚ CIOBANU

and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit wire fraud, that is, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

### Purpose of the Conspiracy

85.    It was the purpose of the conspiracy to entice victims based in the United States to send money to purchase items on the internet that did not exist.

### Manner and Means

86.    The manner and means used to accomplish the objectives of the conspiracy included, among others, the following:

87.    CIOBANU used the internet to post advertisements for goods to online auction websites, including Facebook, eBay, and Craigslist.

88.    At times, CIOBANU and his coconspirators persuaded victims to send money for the advertised goods by creating fake Facebook pages to convince victims that a seller is a real person.  For example, CIOBANU and his coconspirators used the email

address judithlane82@gmail.com to communicate with victims about the sale of vehicles, signing the emails as "Sgt. Judith Lane", and created a Facebook profile for Judith Lane, who was depicted as a member of the Air Force. CIOBANU, acting as "Judith Lane", also posted two Facebook advertisements for the sale of automobiles.

89.     CIOBANU consulted the CS via wire communication over online messaging services about what type of payment he should require his victims to send. For example, on or about December 3, 2015, CIOBANU asked the CS what type of prepaid debit card is the best. On or about December 4, 2015, CIOBANU asked the CS to tell him about cash deposits and what banks to use. On or about February 21, 2016, CIOBANU asks the CS about OneVanilla cards.

90.     Often, CIOBANU requested that the victims send payments in the form of bank wire transfer or bank deposit. In this case, CIOBANU sent an online communication to the CS to retrieve bank account information for the deposit, which he and his coconspirators would provide to the victims in the instructions for payment. For example, on July 17, 2016, CIOBANU requested that the CS provide him two bank accounts, which the CS shared with CIOBANU. On July 18, 2016, CIOBANU informed the CS that he placed money into one of the accounts.

91.     In this way, CIOBANU convinced numerous individuals to send him payment for nonexistent items advertised online.

All in violation of Title 18, United States Code, Section 1349.

34

## COUNT 11
## 18 U.S.C. § 1956(h)

92.     Paragraphs 1 through 5 and 82 through 91 above are re-alleged and incorporated herein by reference.

93.     From at least November 22, 2015, through in or about January 2017, in Fayette County, in the Eastern District of Kentucky and elsewhere,

### IONUȚ CIOBANU

and others known and unknown, knowingly combined, conspired, confederated, and agreed together and with each other to commit offenses against the United States in violation of Title 18, United States Code, Sections 1956(a)(1) and 1956(a)(2), to wit:

(a) knowingly conducting and attempting to conduct financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, violations of Title 18, United States Code, Sections 2, 1343, and 1349, with the intent to promote the carrying on of such specified unlawful activity and, that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i);

(b) knowingly conducting and attempting to conduct financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, violations of Title 18, United States Code, Sections 2, 1343, and 1349, knowing that the transactions were designed in whole

and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i);

(c) knowingly transporting, transmitting, and transferring, or attempting to transport, transmit, and transfer monetary instruments and funds from a place in the United States to or through a place outside the United States, with the intent to promote the carrying on of a specified unlawful activity, that is Title 18, United States Code, Sections 2, 1343, and 1349, in violation of Title 18, United States Code, Section 1956(a)(2)(A); and

(d) knowingly transporting, transmitting, and transferring, or attempting to transport, transmit, and transfer monetary instruments and funds from a place in the United States to or through a place outside the United States, knowing that the instruments and funds represent the proceeds of some form of unlawful activity and that the transportation was designed in whole or part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of specified unlawfully activity, that is, Title 18, United States Code, Sections 2, 1343, and 1349, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i).

### Manner and Means

94.     The manner and means used to accomplish the objectives of the conspiracy included, among others, the following:

95.     After enticing a victim to send money in the manner described above,

36

CIOBANU collected the payment information sent by the victims and provided that to the coconspirators. CIOBANU and a coconspirator created a Google Sheets spreadsheet, which they shared with each other online, and on which they maintained a ledger of transactions conducted between the two. CIOBANU provided the coconspirator at least two Gmail addresses for the purpose of accessing and editing the Google Sheets spreadsheet. CIOBANU would either directly insert the victim payment information to this spreadsheet or convey it to the coconspirator in online communications.

96.     CIOBANU knew that other coconspirators process the money sent by the victims. These coconspirators were based in the United States, and processed the money by taking the codes from the prepaid debit cards, re-encoding those codes to new "dummy" cards or collecting the bank deposits, postal money orders, and other wires, and converting that money to bitcoin to transfer to CIOBANU.

97.     CIOBANU posted to the Google Sheets spreadsheet the bitcoin addresses to which he wanted his bitcoin sent. He also provided bitcoin addresses in the course of online chat communications with a coconspirator. The coconspirator then sent bitcoin he had converted for CIOBANU from the Eastern District of Kentucky to bitcoin addresses CIOBANU provided.

98.     CIOBANU then transferred his bitcoin to another coconspirator located outside the United States. That coconspirator would exchange the bitcoin that represented the proceeds of the underlying fraud into fiat currency, including Romanian lei (RON), Euros, and other government-backed currency.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNT 12
### 18 U.S.C. § 1349

99.     Paragraphs 1 through 5 above are re-alleged and incorporated herein by reference.

100.     MARIUS-DORIN CERNAT, a/k/a "FREDRAMOS83", a/k/a "SANDOKAN2", a/k/a "DS1010K", a/k/a "MULTEPAGINI", a/k/a "JBELITU", a/k/a "MRAMSY78", a/k/a "GEORATCU82", approached the CS online on or around February 12, 2015, inquiring into whether he could provide the CS PayPal My Cash codes for conversion to bitcoin.

101.     From at least February 12, 2015, through in or about November 2017, in Fayette County, in the Eastern District of Kentucky and elsewhere,

### MARIUS-DORIN CERNAT

and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit wire fraud, that is, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of

executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

## Purpose of the Conspiracy

102.    It was the purpose of the conspiracy to entice victims based in the United States to send money to purchase items on the internet that did not exist.

## Manner and Means

103.    The manner and means used to accomplish the objectives of the conspiracy included, among others, the following:

104.    CERNAT used the internet to post advertisements for goods to online auction websites, including Facebook, eBay, and Craigslist.

105.    CERNAT and his coconspirators persuaded victims to send money for the advertised goods through false and fraudulent pretenses, including by posing as a United States Air Force member being "sent to Iraq to fight against ISIS."

106.    CERNAT also convinced victims to send money for advertised goods by posing as a representative of the online auction.  For example, CERNAT and his coconspirators sent victims invoices that appeared to be from eBay Motors and provide an eBay Motors Support Department phone number and email address of ebay@processing-secure.com.  These invoices provided instructions for payment and included reassuring language for secure transactions, such as, "Through OneVanilla Prepaid Visa services we can guarantee you 100% protection and insurance in this transaction.  eBay Payments will secure the payment until the buyer receives, inspects,

and accepts the item.  Or, it if will be the case, eBay will refund the payment to the buyer."

107.    On September 30, 2015, CERNAT requested that the CS review his invoice for suggestions on how to improve it via an online messaging platform.  CERNAT emailed the CS a copy of the invoice that day.

108.    In this way, CERNAT convinced numerous individuals to send him payment for nonexistent items advertised online.

All in violation of Title 18, United States Code, Section 1349.

## COUNT 13
### 18 U.S.C. § 1956(h)

109.    Paragraphs 1 through 5 and 99 through 108 above are re-alleged and incorporated herein by reference.

110.    From at least February 12, 2015, through in or about November 2017, in Fayette County, in the Eastern District of Kentucky and elsewhere,

### MARIUS-DORIN CERNAT

and others known and unknown, knowingly combined, conspired, confederated, and agreed together and with each other to commit offenses against the United States in violation of Title 18, United States Code, Sections 1956(a)(1) and 1956(a)(2), to wit:

(a) knowingly conducting and attempting to conduct financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, violations of Title 18, United States Code, Sections 2, 1343, and 1349, with the intent to promote the carrying on of such

specified unlawful activity and, that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i);

(b) knowingly conducting and attempting to conduct financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, violations of Title 18, United States Code, Sections 2, 1343, and 1349, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i);

(c) knowingly transporting, transmitting, and transferring, or attempting to transport, transmit, and transfer monetary instruments and funds from a place in the United States to or through a place outside the United States, with the intent to promote the carrying on of a specified unlawful activity, that is Title 18, United States Code, Sections 2, 1343, and 1349, in violation of Title 18, United States Code, Section 1956(a)(2)(A); and

(d) knowingly transporting, transmitting, and transferring, or attempting to transport, transmit, and transfer monetary instruments and funds from a place in the United States to or through a place outside the United States, knowing that the instruments and funds represent the proceeds of some form of unlawful activity

and that the transportation was designed in whole or part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of specified unlawfully activity, that is, Title 18, United States Code, Sections 2, 1343, and 1349, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i).

**Manner and Means**

111.    The manner and means used to accomplish the objectives of the conspiracy included, among others, the following:

112.    After enticing a victim to send money in the manner described above, CERNAT collected the payment information sent by the victims and provided that to coconspirators.  CERNAT and a coconspirator created a Google Sheets spreadsheet, which they shared with each other online, and on which they maintained a ledger of transactions conducted between the two.  CERNAT provided the coconspirator at least two Gmail addresses for the purpose of accessing and editing the Google Sheets spreadsheet.  CERNAT would either directly insert the victim payment information to this spreadsheet or convey it to the coconspirator in online communications.

113.    CERNAT knew that other coconspirators process the money sent by the victims.  These coconspirators were based in the United States, and processed the money by taking the codes from the prepaid debit cards, re-encoding those codes to new "dummy" cards or collecting the money orders, and converting that money to bitcoin to transfer to CERNAT.

114.    CERNAT posted to the Google Sheets spreadsheet the bitcoin addresses to

which he wanted his bitcoin sent. He also provided bitcoin addresses in the course of online chat communications with a coconspirator. The coconspirator then sent bitcoin he had converted for CERNAT from the Eastern District of Kentucky to bitcoin addresses CERNAT provided.

115.    CERNAT then transferred his bitcoin to another coconspirator located outside the United States. That coconspirator would exchange the bitcoin that represented the proceeds of the underlying fraud into fiat currency, including Romanian lei (RON), Euros, and other government-backed currency.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNT 14
### 18 U.S.C. § 1349

116.    Paragraphs 1 through 5 above are re-alleged and incorporated herein by reference.

117.    ALEXANDRU ION, a/k/a "LENOVO2015", a/k/a "FLORINSALAM999", approached the CS online on or around June 14, 2015, inquiring into whether the CS would purchase PayPal My Cash cards in exchange for bitcoin.

118.    From at least June 14, 2015, through in or about January 2017, in Fayette County, in the Eastern District of Kentucky and elsewhere,

**ALEXANDRU ION**

and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit wire fraud, that is, willfully and knowingly, having devised and intending to devise a scheme and artifice to

defraud, and for obtaining money and property by means of false and fraudulent

pretenses, representations, and promises, would and did transmit and cause to be

transmitted by means of wire, radio, and television communication in interstate and

foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of

executing such scheme and artifice, in violation of Title 18, United States Code, Section

1343.

## Purpose of the Conspiracy

119.   It was the purpose of the conspiracy to entice victims based in the United

States to send money to purchase items on the internet that did not exist.

## Manner and Means

120.   The manner and means used to accomplish the objectives of the conspiracy

included, among others, the following:

121.   ION used the internet to post advertisements for goods to online auction

websites, including Craigslist and eBay.

122.   ION and his coconspirators persuaded victims to send money for the

advertised goods by using email addresses with American sounding names to convince

the buyer that the seller is a real person.  These include melissabrown367@gmail.com,

angela888green@gmail.com, amanda.maxwell@gmail.com, and

linda.r.johnson65@gmail.com.  Through these email addresses, ION and his

coconspirators would communicate with victims about selling vehicles and other items

online.

123.    ION and his coconspirators also lured victims into sending money by emailing them invoices that appear to be from legitimate online auction companies.

124.    ION communicated with the CS through online messaging services about methods of payment he instructed victims to use when sending payment for the nonexistent items he advertised online.  For example, on November 13, 2015, ION requested that the CS provide him names and a state for sending MoneyGram wires.  On November 25, 2015, MoneyGram payments were picked up using the given name and state.

125.    In this way, ION convinced numerous individuals to send him payment for nonexistent items advertised online.

All in violation of Title 18, United States Code, Section 1349.

### COUNT 15
### 18 U.S.C. § 1956(h)

126.    Paragraphs 1 through 5 and 116 through 125 above are re-alleged and incorporated herein by reference.

127.    From at least June 14, 2015, through in or about January 2017, in Fayette County, in the Eastern District of Kentucky and elsewhere,

### ALEXANDRU ION

and others known and unknown, knowingly combined, conspired, confederated, and agreed together and with each other to commit offenses against the United States in violation of Title 18, United States Code, Sections 1956(a)(1) and 1956(a)(2), to wit:

(a) knowingly conducting and attempting to conduct financial transactions affecting

45

interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, violations of Title 18, United States Code, Sections 2, 1343, and 1349, with the intent to promote the carrying on of such specified unlawful activity and, that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i);

(b) knowingly conducting and attempting to conduct financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, violations of Title 18, United States Code, Sections 2, 1343, and 1349, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i);

(c) knowingly transporting, transmitting, and transferring, or attempting to transport, transmit, and transfer monetary instruments and funds from a place in the United States to or through a place outside the United States, with the intent to promote the carrying on of a specified unlawful activity, that is Title 18, United States Code, Sections 2, 1343, and 1349, in violation of Title 18, United States Code, Section 1956(a)(2)(A); and

(d) knowingly transporting, transmitting, and transferring, or attempting to transport,

transmit, and transfer monetary instruments and funds from a place in the United States to or through a place outside the United States, knowing that the instruments and funds represent the proceeds of some form of unlawful activity and that the transportation was designed in whole or part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of specified unlawfully activity, that is, Title 18, United States Code, Sections 2, 1343, and 1349, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i).

### Manner and Means

128.    The manner and means used to accomplish the objectives of the conspiracy included, among others, the following:

129.    After enticing a victim to send money in the manner described above, ION collected the payment information sent by the victims and provided that to the coconspirators.  ION and a coconspirator created a Google Sheets spreadsheet, which they shared with each other online, and on which they maintained a ledger of transactions conducted between the two.  ION provided the coconspirator at least six Gmail addresses for the purpose of accessing and editing the Google Sheets spreadsheet.  ION would either directly insert the victim payment information to this spreadsheet or convey it to the coconspirator in online communications.

130.    ION knew that other coconspirators process the money sent by the victims. These coconspirators were based in the United States, and processed the money by taking the codes from the prepaid debit cards, re-encoding those codes to new "dummy" cards

or collecting the wire transfers or bank deposits, and converting that money to bitcoin to transfer to ION.

131.   ION posted to the Google Sheets spreadsheet the bitcoin addresses to which he wanted his bitcoin sent.  He also provided bitcoin addresses in the course of online chat communications with a coconspirator. The coconspirator then sent bitcoin he had converted for ION from the Eastern District of Kentucky to bitcoin addresses ION provided.

132.   ION then transferred his bitcoin to another coconspirator located outside the United States.  That coconspirator would exchange the bitcoin that represented the proceeds of the underlying fraud into fiat currency, including Romanian lei (RON), Euros, and other government-backed currency.

All in violation of Title 18, United States Code, Section 1956(h).

**COUNT 16**
**18 U.S.C. § 1349**

133.   Paragraphs 1 through 5 above are re-alleged and incorporated herein by reference.

134.   ŞTEFAN-ALEXANDRU PĂIUŞI, a/k/a "NOLIMIT", a/k/a "LIMITNO", a/k/a "MOUNTAINQU", a/k/a "JANEANDPAULROBERTS", approached the CS online on or around October 23, 2015, inquiring into what payment forms the CS could processed.

135.   From at least October 23, 2015, through in or about December of 2017, in Fayette County, in the Eastern District of Kentucky and elsewhere,

## ȘTEFAN-ALEXANDRU PĂIUȘI

and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit wire fraud, that is, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

### Purpose of the Conspiracy

136.    It was the purpose of the conspiracy to entice victims based in the United States to send money to purchase items on the internet that did not exist.

### Manner and Means

137.    The manner and means used to accomplish the objectives of the conspiracy included, among others, the following:

138.    PĂIUȘI used the internet to post advertisements for goods to online auction websites, including eBay, Craigslist, and Autotrader.

139.    PĂIUȘI and his coconspirators persuaded victims to send money for the advertised goods posing as customer service representatives of legitimate operations, for example, by using the email address privateinvoices@accountant.com.

49

140. PĂIUȘI also convinced victims to send money for the advertised goods by sending them invoices for payment that appeared legitimate. On September 20, 2016, he emailed the invoice to the CS, after communicating with the CS about struggles he had luring individuals to send payment via money orders and cashier's check. The invoice appeared to be sent from "eBay™ Buyer Protection", provided the victim with an email address for questions, described the seller as a "certified eBay™ third-party seller", and explained that the buyer will be refunded if he or she refuses the merchandise.

141. PĂIUȘI communicated with the CS through online messaging services about methods of payment he instructed victims to use when sending payment for the nonexistent items he advertised online. When using bank wires or deposits as the method of payment from the victims, PĂIUȘI communicated with the CS over online messaging platforms to retrieve bank account information for the victims to send or deposit their payments. For example, on June 28, 2016, PĂIUȘI requested that the CS provide him a bank account for a wire transfer over online messaging platform. On June 29, 2016, PĂIUȘI confirmed he had the victims send money to the account provided by the CS.

142. In this way, PĂIUȘI convinced numerous individuals to send him payment for nonexistent items advertised online.

All in violation of Title 18, United States Code, Section 1349.

## COUNT 17
### 18 U.S.C. § 1956(h)

143. Paragraphs 1 through 5 and 133 through 142 above are re-alleged and incorporated herein by reference.

144.     From at least October 23, 2015, through in or about December 2017, in Fayette County, in the Eastern District of Kentucky and elsewhere,

## ȘTEFAN-ALEXANDRU PĂIUȘI

and others known and unknown, knowingly combined, conspired, confederated, and agreed together and with each other to commit offenses against the United States in violation of Title 18, United States Code, Sections 1956(a)(1) and 1956(a)(2), to wit:

(a) knowingly conducting and attempting to conduct financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, violations of Title 18, United States Code, Sections 2, 1343, and 1349, with the intent to promote the carrying on of such specified unlawful activity and, that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i);

(b) knowingly conducting and attempting to conduct financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, violations of Title 18, United States Code, Sections 2, 1343, and 1349, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i);

(c) knowingly transporting, transmitting, and transferring, or attempting to transport, transmit, and transfer monetary instruments and funds from a place in the United States to or through a place outside the United States, with the intent to promote the carrying on of a specified unlawful activity, that is Title 18, United States Code, Sections 2, 1343, and 1349, in violation of Title 18, United States Code, Section 1956(a)(2)(A); and

(d) knowingly transporting, transmitting, and transferring, or attempting to transport, transmit, and transfer monetary instruments and funds from a place in the United States to or through a place outside the United States, knowing that the instruments and funds represent the proceeds of some form of unlawful activity and that the transportation was designed in whole or part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of specified unlawfully activity, that is, Title 18, United States Code, Sections 2, 1343, and 1349, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i).

**Manner and Means**

145.    The manner and means used to accomplish the objectives of the conspiracy included, among others, the following:

146.    After enticing a victim to send money in the manner described above, PĂIUȘI collected the payment information sent by the victims and provided that to coconspirators. PĂIUȘI and a coconspirator created a Google Sheets spreadsheet, which they shared with each other online, and on which they maintained a ledger of transactions

conducted between the two.  PĂIUŞI provided a coconspirator at least one Gmail address for the purpose of accessing and editing the Google Sheets spreadsheet.  PĂIUŞI would either directly insert the victim payment information to this spreadsheet or convey it to a coconspirator in online communications.

147.    PĂIUŞI knew that other coconspirators process the money sent by the victims.  These coconspirators were based in the United States, and processed the money by taking the codes from the prepaid debit cards, re-encoding those codes to new "dummy" cards or collecting the wire transfers, bank deposits, cashier's checks, or money orders, and converting that money to bitcoin to transfer to PĂIUŞI.

148.    PĂIUŞI posted to the Google Sheets spreadsheet the bitcoin addresses to which he wanted his bitcoin sent.  He also provided bitcoin addresses in the course of online chat communications with a coconspirator. The coconspirator then sent bitcoin he had converted for PĂIUŞI from the Eastern District of Kentucky to bitcoin addresses PĂIUŞI provided.

149.    PĂIUŞI then transferred his bitcoin to another coconspirator located outside the United States.  That coconspirator would exchange the bitcoin that represented the proceeds of the underlying fraud into fiat currency, including Romanian lei (RON), Euros, and other government-backed currency.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNT 18
### 18. U.S.C. § 1349

150.    Paragraphs 1 through 5 above are re-alleged and incorporated herein by

reference.

151.   EUGEN-ALIN BADEA, a/k/a "CRAZYBRUTUS", a/k/a "CRZYBEAMER", a/k/a "GUYTONSILVASFAA", approached the CS online on or around May 5, 2015, inquiring into whether the CS could process PayPal My Cash cards.

152.   From at least May 5, 2015, through in or about December of 2017, in Fayette County, in the Eastern District of Kentucky and elsewhere,

**EUGEN-ALIN BADEA**

and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit

(a) Mail fraud, that is, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did cause to be delivered by mail or by any private or commercial interstate carrier any matter or thing according to the direction thereon, for the purpose of executing the scheme and artifice or attempting to do so, in violation of Title 18, United States Code, 1341; and

(b) Wire fraud, that is, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals,

pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

## Purpose of the Conspiracy

153. It was the purpose of the conspiracy to entice victims based in the United States to send money to purchase items on the internet that did not exist.

## Manner and Means

154. The manner and means used to accomplish the objectives of the conspiracy included, among others, the following:

155. BADEA used the internet to post advertisements for goods to online auction websites, including eBay, Craigslist, and Autotrader.

156. BADEA and his coconspirators lured victims into sending money for the advertised goods by sending the victims invoices for products using language intended to make the sale of the good legitimate. These invoices often contained language for payment instructions.

157. BADEA communicated with the CS through online messaging services about methods of payment he instructed victims to use when sending payment for the nonexistent items he advertised online. On September 9, 2016, BADEA requested assistance from the CS for instructions to send to victims on how to pay for goods using cashier's checks.

158. BADEA communicated with the CS over online messaging platforms to retrieve address information for the victims to mail their payments, when using cashier's

checks.  For example, on July 18, 2017, the CS provided BADEA an address for the mailing of cashier's checks, upon BADEA's inquiry for this information.  On August 1, 2017, BADEA informed the CS that he caused a cashier's check to be mailed to an address the CS had provided to him.

159.    In this way, BADEA convinced numerous individuals to send him payment for nonexistent items advertised online.

All in violation of Title 18, United States Code, Section 1349.

## COUNT 19
### 18 U.S.C. § 1956(h)

160.    Paragraphs 1 through 5 and 150 through 159 above are re-alleged and incorporated herein by reference.

161.    From at least May 5, 2015, through in or about December of 2017, in Fayette County, in the Eastern District of Kentucky and elsewhere,

**EUGEN-ALIN BADEA**

and others known and unknown, knowingly combined, conspired, confederated, and agreed together and with each other to commit offenses against the United States in violation of Title 18, United States Code, Sections 1956(a)(1) and 1956(a)(2), to wit:

(a) knowingly conducting and attempting to conduct financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, violations of Title 18, United States Code, Sections 2, 1341, 1343, and 1349, with the intent to promote the carrying on of such specified unlawful activity and, that while conducting and attempting to

conduct such financial transactions, knew that the property involved in the

financial transactions represented the proceeds of some form of unlawful activity,

in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i);

(b) knowingly conducting and attempting to conduct financial transactions affecting

interstate and foreign commerce, which transactions involved the proceeds of

specified unlawful activity, that is, violations of Title 18, United States Code,

Sections 2, 1341, 1343, and 1349, knowing that the transactions were designed in

whole and in part to conceal and disguise the nature, location, source, ownership,

and control of the proceeds of said specified unlawful activity in violation of Title

18, United States Code, Section 1956(a)(1)(B)(i);

(c) knowingly transporting, transmitting, and transferring, or attempting to transport,

transmit, and transfer monetary instruments and funds from a place in the United

States to or through a place outside the United States, with the intent to promote

the carrying on of a specified unlawful activity, that is Title 18, United States

Code, Sections 2, 1341, 1343, and 1349, in violation of Title 18, United States

Code, Section 1956(a)(2)(A); and

(d) knowingly transporting, transmitting, and transferring, or attempting to transport,

transmit, and transfer monetary instruments and funds from a place in the United

States to or through a place outside the United States, knowing that the

instruments or funds represent the proceeds of some form of unlawful activity and

that the transportation was designed in whole or part to conceal or disguise the

nature, location, source, ownership, or control of the proceeds of specified

unlawfully activity, that is, Title 18, United States Code, Sections 2, 1341, 1343,

and 1349, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i).

### Manner and Means

162.    The manner and means used to accomplish the objectives of the conspiracy

included, among others, the following:

163.    After enticing a victim to send money in the manner described above,

BADEA collected the payment information sent by the victims and provided that to

coconspirators.  BADEA and a coconspirator created a Google Sheets spreadsheet, which

they shared with each other online, and on which they maintained a ledger of transactions

conducted between the two.  BADEA provided the coconspirator at least one Gmail

address for the purpose of accessing and editing the Google Sheets spreadsheet.  BADEA

would either directly insert the victim payment information to this spreadsheet or convey

it to the coconspirator in online communications.

164.    BADEA knew that other coconspirators process the money sent by the

victims.  These coconspirators were based in the United States, and processed the money

by taking the codes from the prepaid debit cards, re-encoding those codes to new

"dummy" cards or collecting the wire transfers, bank deposits, cashier's checks, or

money orders, and converting that money to bitcoin to transfer the bitcoin to the BADEA.

165.    BADEA posted to the Google Sheets spreadsheet the bitcoin addresses to

which he wanted his bitcoin sent.  He also provided bitcoin addresses in the course of

online chat communications with a coconspirator. The coconspirator then sent bitcoin he had converted for BADEA from the Eastern District of Kentucky to bitcoin addresses BADEA provided.

166.    BADEA then transferred his bitcoin to another coconspirator located outside the United States.  That coconspirator would exchange the bitcoin that represented the proceeds of the underlying fraud into fiat currency, including Romanian lei (RON), Euros, and other government-backed currency.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNT 20
## 18 U.S.C. § 1349

167.    Paragraphs 1 through 5 above are re-alleged and incorporated herein by reference.

168.    CRISTIȘOR OLTEANU, a/k/a "GARETHBALE", a/k/a "GOODDEAL2017", a/k/a "GEREOSTEMILISHE66", approached the CS online on or around October 30, 2015, inquiring into whether the CS could trade Amazon gift cards for bitcoin.

169.    From at least October 30, 2015, through in or about October of 2017, in Fayette County, in the Eastern District of Kentucky and elsewhere,

### CRISTIȘOR OLTEANU

and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit wire fraud, that is, willfully and knowingly, having devised and intending to devise a scheme and artifice to

59

defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

### Purpose of the Conspiracy

170.   It was the purpose of the conspiracy to entice victims based in the United States to send money to purchase items on the internet that did not exist.

### Manner and Means

171.   The manner and means used to accomplish the objectives of the conspiracy included, among others, the following:

172.   OLTEANU used the internet to post advertisements for goods to online auction websites, including eBay and Amazon.

173.   OLTEANU and his coconspirators persuaded victims to send money for the advertised goods by convincing the victim, after they responded to an advertisement posted to an online auction site, that their transaction would be handled by a secure buyer channel.  This included posting advertisements to eBay and telling the buyer that the transaction would be handled by "eBay Buyer Protection", or by posting advertisements to Amazon and telling the buyer that the transaction would be handled by "Amazon FPS Vehicle Purchase Protection Program".

174.    OLTEANU would further entice victims to send money for the advertised goods by submitting invoices to the victims that appeared to be legitimate.  These invoices included things like the phone number for "Amazon Support Department" and bank accounts in the name of "Auto Value Remarketing Inc."  On October 12, 2017, OLTEANU suggested that he send the CS his invoice for editing.  The invoice appeared to be from eBay Buyer Protection, provided a phone number for eBay Online Support, explained a five-point Payment Guarantee Policy, and detailed how eBay verified the order.

175.    OLTEANU communicated with the CS through online messaging services about methods of payment he instructed victims to use when sending payment for the nonexistent items he advertised online.  When using bank wires or deposits as the method of payment, OLTEANU communicated with the CS over online messaging platforms to retrieve bank account information for the victims to send or deposit their payments. For example, on July 13, 2016, OLTEANU requested account information from the CS via online communication.  The CS provided him information about a bank account, including account name, account number, and account routing number.  OLTEANU then caused a victim to send a wire to this account.

176.    In this way, OLTEANU convinced numerous individuals to send him payment for nonexistent items advertised online.

All in violation of Title 18, United States Code, Section 1349.

## COUNT 21
### 18 U.S.C. § 1956(h)

177.    Paragraphs 1 through 5 and 167 through 176 above are re-alleged and incorporated herein by reference.

178.    From at least October 30, 2015, through in or about October of 2017, in Fayette County, in the Eastern District of Kentucky and elsewhere,

### CRISTIȘOR OLTEANU

and others known and unknown, knowingly combined, conspired, confederated, and agreed together and with each other to commit offenses against the United States in violation of Title 18, United States Code, Sections 1956(a)(1) and 1956(a)(2), to wit:

(a) knowingly conducting and attempting to conduct financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, violations of Title 18, United States Code, Sections 2, 1343, and 1349, with the intent to promote the carrying on of such specified unlawful activity and, that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i);

(b) knowingly conducting and attempting to conduct financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, violations of Title 18, United States Code, Sections 2, 1343, and 1349, knowing that the transactions were designed in whole

and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i);

(c) knowingly transporting, transmitting, and transferring, or attempting to transport, transmit, and transfer monetary instruments and funds from a place in the United States to or through a place outside the United States, with the intent to promote the carrying on of a specified unlawful activity, that is Title 18, United States Code, Sections 2, 1343, and 1349, in violation of Title 18, United States Code, Section 1956(a)(2)(A); and

(d) knowingly transporting, transmitting, and transferring, or attempting to transport, transmit, and transfer monetary instruments and funds from a place in the United States to or through a place outside the United States, knowing that the instruments and funds represent the proceeds of some form of unlawful activity and that the transportation was designed in whole or part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of specified unlawfully activity, that is, Title 18, United States Code, Sections 2, 1343, and 1349, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i).

**Manner and Means**

179.   The manner and means used to accomplish the objectives of the conspiracy included, among others, the following:

180.   After enticing a victim to send money in the manner described above,

63

OLTEANU collected the payment information sent by the victims and provided that to the coconspirators. OLTEANU and a coconspirator created a Google Sheets spreadsheet, which they shared with each other online, and on which they maintained a ledger of transactions conducted between the two. OLTEANU provided the coconspirator at least one Gmail address for the purpose of accessing and editing the Google Sheets spreadsheet. OLTEANU would either directly insert the victim payment information to this spreadsheet or convey it to the coconspirator in online communications.

181.    OLTEANU knew that other coconspirators process the money sent by the victims. These coconspirators were based in the United States, and processed the money by taking the codes from the prepaid debit cards, re-encoding those codes to new "dummy" cards or collecting the wire transfers, bank deposits, cashier's checks, or money orders, and converting that money to bitcoin to transfer to OLTEANU.

182.    OLTEANU posted to the Google Sheets spreadsheet the bitcoin addresses to which he wanted his bitcoin sent. He also provided bitcoin addresses in the course of online chat communications with a coconspirator. The coconspirator then sent bitcoin he had converted for OLTEANU from the Eastern District of Kentucky to bitcoin addresses OLTEANU provided.

183.    OLTEANU then transferred his bitcoin to another coconspirator located outside the United States. That coconspirator would exchange the bitcoin that represented the proceeds of the underlying fraud into fiat currency, including Romanian lei (RON), Euros, and other government-backed currency.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNT 22
### 18 U.S.C. § 1956(h)

184.   Paragraphs 1 through 5 are re-alleged and incorporated herein by reference.

185.   ADRIAN MITAN, a/k/a "ABCD0", a/k/a "XPL", a/k/a "XPLADRIAN", a/k/a "DAUCUFURKA", discussed posting advertisements to Craigslist with the CS on or around May 11, 2016.

186.   From at least May 11, 2016, through in or about July of 2016, in Boyd County, in the Eastern District of Kentucky and elsewhere,

### ADRIAN MITAN

and others known and unknown, knowingly combined, conspired, confederated, and agreed together and with each other to commit offenses against the United States in violation of Title 18, United States Code, Sections 1956(a)(1) and 1956(a)(2), to wit:

  (a) knowingly conducting and attempting to conduct financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, violations of Title 18, United States Code, Sections 2, 1343, and 1349, with the intent to promote the carrying on of such specified unlawful activity and, that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i);

  (b) knowingly conducting and attempting to conduct financial transactions affecting

interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, violations of Title 18, United States Code, Sections 2, 1343, and 1349, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i);

(c) knowingly transporting, transmitting, and transferring, or attempting to transport, transmit, and transfer monetary instruments and funds from a place in the United States to or through a place outside the United States, with the intent to promote the carrying on of a specified unlawful activity, that is Title 18, United States Code, Sections 2, 1343, and 1349, in violation of Title 18, United States Code, Section 1956(a)(2)(A); and

(d) knowingly transporting, transmitting, and transferring, or attempting to transport, transmit, and transfer monetary instruments and funds from a place in the United States to or through a place outside the United States, knowing that the instruments and funds represent the proceeds of some form of unlawful activity and that the transportation was designed in whole or part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of specified unlawfully activity, that is, Title 18, United States Code, Sections 2, 1343, and 1349, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i).

**Manner and Means**

187.    The manner and means used to accomplish the objectives of the conspiracy included, among others, the following:

188.    ADRIAN MITAN posted fake advertisements to online auction websites like Craigslist.  He had approximately ten to twenty individuals working for him to assist with the scheme.  To accomplish this scheme, he fraudulently took over several Craigslist accounts to use to post advertisements, and in this way, appeared to be a legitimate seller. When victims responded to advertisements indicating a desire to purchase the item, he sent his victims invoices to complete the transactions.

189.    After enticing a victim to send money in the manner described above, MITAN collected the payment information sent by the victims and provided that to a coconspirator. On or around June 13, 2016, MITAN began using the Google Sheets spreadsheet the coconspirator shared with LIVIU-SORIN NEDELCU to post victim money once MITAN received it.

190.    On at least one occasion, MITAN requested from the coconspirator bank account information for the deposit of cash by his victims.

191.    MITAN knew that other coconspirators process the money sent by the victims.  These coconspirators were based in the United States, and processed the money by taking the codes from the prepaid debit cards, re-encoding those codes to new "dummy" cards or collecting the bank wire transfers, and converting that money to bitcoin to transfer to MITAN.

192.    MITAN provided the coconspirator the bitcoin address to which he wanted his bitcoin sent in the course of online chat communications. The coconspirator then sent bitcoin he had converted for MITAN from the Eastern District of Kentucky to the bitcoin address MITAN provided.

193.    MITAN then transferred his bitcoin to another coconspirator located outside the United States.  That coconspirator would exchange the bitcoin that represented the proceeds of the underlying fraud into fiat currency, including Romanian lei (RON), Euros, and other government-backed currency.

All in violation of Title 18, United States Code, Section 1956(h).

### COUNT 23
### 18 U.S.C. § 1349

194.    Paragraphs 1 through 5 above are re-alleged and incorporated herein by reference.

195.    From December 31, 2013, and continuing until at least the date of this Indictment, in Fayette County, in the Eastern District of Kentucky and elsewhere,

**BOGDAN-ȘTEFAN POPESCU**

and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit wire fraud, that is, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and

foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

### Purpose of the Conspiracy

196.   It was the purpose of the conspiracy to entice victims based in the United States to send money to purchase items on the internet that did not exist.

### Manner and Means

197.   The manner and means used to accomplish the objectives of the conspiracy included, among others, the following:

198.   Coconspirators posted advertisements for items on auction websites, like eBay, with the intent to lure victims into sending payment for those items, even though they did not exist.  When victims responded to the advertisements, they often emailed the purported seller, as directed in the advertisement.  The coconspirators then communicated with the victims via email, often signing their emails by posing as a member of the military, like "Sgt. Logan Burdick".  Other emails purported to be from the online auction company, like eBay.  The emails often communicated convincing information about the item being sold and the reason payment was required before shipping or viewing the item.  These victim communication emails were often auto-forwarded to POPESCU at treaba2013@gmail.com.

199.   On several occasions, these types of emails were sent to individuals in the Eastern District of Kentucky, who considered buying these nonexistent items, including:

    a. An email exchange between J.R. and M.R., located in Cynthiana, Kentucky, and "Sgt. Logan Burdick", which was forwarded to POPESCU's email address on February 16, 2014;

    b. An email exchange between A.W., located in Lawrenceburg, Kentucky and "Sgt. Christine Cho",  which was forwarded to POPESCU's email address on January 28, 2014; and

    c. An email exchange between B.S., located in Olive Hill, Kentucky, and "Sgt. Christine Cho", which was forwarded to POPESCU's email address on February 9, 2014.

200.   POPESCU also emailed others tools to assist in the advertisement fraud scheme.  He emailed the language and photographs to be used for advertisements, and the language to be used by coconspirators to respond to buyer inquiries.  He emailed usernames and passwords for accessing IP address anonymizing services.  He also emailed email addresses and passwords to use for posting fraudulent advertisements.

201.   Victims often sent money for the items posted online in the form of photographs of prepaid debit cards to email addresses, which were auto-forwarded to POPESCU at treaba2013@gmail.com.

202.   In this way, POPESCU facilitated the commission of the online auction fraud.

All in violation of Title 18, United States Code, Section 1349.

## COUNT 24
### 18 U.S.C. § 1956(h)

203.    Paragraphs 1 through 5 and 194 through 202 above are re-alleged and incorporated herein by reference.

204.    From at least October 30, 2015, through in or about October of 2017, in Fayette County, in the Eastern District of Kentucky and elsewhere,

**BOGDAN-ȘTEFAN POPESCU,
FLORIN ARVAT,
ALIN-IONUȚ DOBRICĂ, and
VLAD-CĂLIN NISTOR**

and others known and unknown, knowingly combined, conspired, confederated, and agreed together and with each other to commit offenses against the United States in violation of Title 18, United States Code, Sections 1956(a)(1) and 1956(a)(2), to wit:

(a) knowingly conducting and attempting to conduct financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, violations of Title 18, United States Code, Sections 2, 1343, and 1349, with the intent to promote the carrying on of such specified unlawful activity and, that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i);

(b) knowingly conducting and attempting to conduct financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of

specified unlawful activity, that is, violations of Title 18, United States Code, Sections 2, 1343, and 1349, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i);

(c) knowingly transporting, transmitting, and transferring, or attempting to transport, transmit, and transfer monetary instruments and funds from a place in the United States to or through a place outside the United States, with the intent to promote the carrying on of a specified unlawful activity, that is Title 18, United States Code, Sections 2, 1343, and 1349, in violation of Title 18, United States Code, Section 1956(a)(2)(A); and

(d) knowingly transporting, transmitting, and transferring, or attempting to transport, transmit, and transfer monetary instruments and funds from a place in the United States to or through a place outside the United States, knowing that the instruments and funds represent the proceeds of some form of unlawful activity and that the transportation was designed in whole or part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of specified unlawfully activity, that is, Title 18, United States Code, Sections 2, 1343, and 1349, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i).

## Manner and Means

205.    The manner and means used to accomplish the objectives of the conspiracy

included, among others, the following:

206.    Victims of the online auction fraud scheme described above sent their payments to U.S.-based coconspirators, who converted victim funds to bitcoin and sent that bitcoin back to coconspirators located in Eastern Europe.  Specifically, victim money was eventually sent to a coconspirator in the Eastern District of Kentucky, who then sent payment for that victim money to bitcoin addresses at the direction of coconspirators, which was then sent to POPESCU's bitcoin addresses.

207.    With the assistance of FLORIN ARVAT and ALIN-IONUȚ DOBRICĂ, POPESCU negotiated bitcoin exchanges for fiat currency with bitcoin exchangers like VLAD CĂLIN NISTOR.  Some of this bitcoin was traced to the online auction fraud described herein, and NISTOR knew that he was exchanging bitcoin representing fraud proceeds to fiat currency. POPESCU, directly or indirectly through ARVAT and DOBRICĂ, then retrieved the money that had been exchanged for fiat currency.

208.    POPESCU directed that some of the funds NISTOR exchanged be wired into bank accounts in the name of his family members and associates.  ARVAT and DOBRICĂ also received some the funds exchanged into bank accounts in their own names.  POPESCU, ARVAT, and DOBRICĂ, knowing that the funds represented fraud proceeds, withdrew cash from these accounts.

All in violation of Title 18, United States Code, Section 1956(h).

**FORFEITURE ALLEGATIONS**
**18 U.S.C. § 1963**
**18 U.S.C. § 981(a)(1)(C)**
**18 U.S.C. § 982(a)(1)**
**28 U.S.C. § 2461**

1.     The allegations contained in Count One of this Indictment are hereby re-alleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 1963 and Title 28, United States Code, Section 2461(c).

2.     Upon conviction of the offense charged in Count One of this Indictment,

**ANDREI-CĂTĂLIN STOICA,**
**VICTOR-AUREL GRAMA,**
**LIVIU-SORIN NEDELCU,**
**IONUȚ CIOBANU,**
**MARIUS-DORIN CERNAT,**
**ALEXANDRU ION,**
**ȘTEFAN-ALEXANDRU PĂIUȘI,**
**EUGEN-ALIN BADEA,**
**CRISTIȘOR OLTEANU,**
**ADRIAN MITAN,**
**BOGDAN-ȘTEFAN POPESCU,**
**FLORIN ARVAT,**
**ALIN-IONUȚ DOBRICĂ,**
**VLAD-CĂLIN NISTOR, and**
**ROSSEN IOSSIFOV**

shall forfeit to the United States of America,

      a.  Any interest acquired or maintained in violation of section 1962, which interests are subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(1);

      b.  Any interest in, security of, claim against, or property or contractual right

of any kind affording a source of influence over, any enterprise which the defendants established, operated, controlled, conducted, or participated in the conduct of, in violation of section 1962, which interests, securities, claims, and rights are subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963 (a)(2); and

    c.  Any property constituting, or derived from, any proceeds obtained, directly or indirectly, from racketeering activity in violation of section 1962, which property is subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(3).

    3.    If any of the property subject to forfeiture pursuant to Title 18, United States Code, Section 1963(a)(1), (2), and (3), as a result of any act or omission of the defendants:

    a.  Cannot be located upon the exercise of due diligence;

    b.  Has been transferred or sold to, or deposited with, a third party;

    c.  Has been placed beyond the jurisdiction of the court;

    d.  Has been substantially diminished in value; or

    e.  Has been comingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property, pursuant to Title 18, United States Code, Section 1963(m).

All pursuant to Title 18, United States Code, Sections 1962, 1963(a)(1), (2), and (3), and 1963(m).

4.      The allegations contained in Counts Two, Three, and Six through Twenty-Four of this Indictment are hereby re-alleged and incorporated by herein by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1) and Title 28, United States Code, Section 2461.

5.      Upon conviction of the offenses charged in Counts Two, Three, and Six through Twenty-Four of this Indictment,

**ANDREI-CĂTĂLIN STOICA,**
**VICTOR-AUREL GRAMA,**
**LIVIU-SORIN NEDELCU,**
**IONUȚ CIOBANU,**
**MARIUS-DORIN CERNAT,**
**ALEXANDRU ION,**
**ȘTEFAN-ALEXANDRU PĂIUȘI,**
**EUGEN-ALIN BADEA,**
**CRISTIȘOR OLTEANU,**
**ADRIAN MITAN,**
**BOGDAN-ȘTEFAN POPESCU,**
**FLORIN ARVAT,**
**ALIN-IONUȚ DOBRICĂ,**
**VLAD-CĂLIN NISTOR, and**
**ROSSEN IOSSIFOV**

shall forfeit the United States of America, any property, real or personal, which is involved in such offense, and/or constitutes or is derived from proceeds traceable to violations of Title 18, United States Code, Sections 1349 or 1956.

6.      If any property subject to forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1) and Title 28, United States Code, Section

2461(c), as a result of any act or omission of the defendants:

    a.  Cannot be located upon the exercise of due diligence;

    b.  Has been transferred or sold to, or deposited with, a third party;

    c.  Has been placed beyond the jurisdiction of the court;

    d.  Has been substantially diminished in value; or

    e.  Has been comingled with other property which cannot be divided without difficulty,

the United States of America, shall be entitled to forfeiture of substitute property, pursuant to Title 21, United States Code, Section 853(p).

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1), and Title 28, United States Code, Section 2461(c), which incorporates Title 21, United States Code, Section 853(p).

**A TRUE BILL**

**ROBERT M. DUNCAN, JR.**
**UNITED STATES ATTORNEY**

## <u>PENALTIES</u>

**COUNT 1:**   Not more than 20 years imprisonment, $250,000 fine or twice the gross gain or loss, and 3 years supervised release.

**COUNTS 2, 6, 8, 10, 12, 14, 16, 18, 19, 20, 22, 23:**
Not more than 20 years imprisonment, $250,000 fine or twice the gross gain or loss, and 3 years supervised release.

**COUNTS 3, 7, 9, 11, 13, 15, 17, 19, 21, 24:**
Not more than 20 years imprisonment, $500,000 fine or twice the gross gain or loss, and 3 years supervised release.

**COUNTS 4, 5:**
If convicted of one count, mandatory term of imprisonment of two years, to be served consecutive to any other sentence imposed for Counts 1 through 3.

If convicted of two or more counts: 2 years imprisonment, which may run concurrently, in whole or in part, with any other term of imprisonment imposed for Aggravated Identity Theft convictions, but consecutively to any term of imprisonment imposed on Counts 1 through 3.

Plus, not more than $250,000 fine and 1 year supervised release on each count of conviction on Counts 4 through 5.

**PLUS:**   Mandatory special assessment of $100 per count.

**PLUS:**   Restitution, if applicable.